May it please the Court. My name is Daniel Harris. I represent the plaintiffs, John and Carol Robin Schlegel. I'd like to reserve two minutes. All right. Watch the clock. The Schlegels own a home in New Mexico. They fell behind on their mortgage. While their mortgage was in default, it was acquired by Wells Fargo. They worked out a loan modification agreement with Wells Fargo. After the loan modification agreement was signed, they got a letter telling them they were in default. They called, not to worry, sit tight, go ahead with the deal. They went ahead with the deal. They made the payments as required. A few months later, they got another letter telling them they were in default, demanding money that they didn't really owe at the time. They called. This time they were told the loan modification agreement was not in effect. They followed up with a letter and then later a lawsuit. Wells Fargo responded with letters telling them they were in default, demanding money they did not in fact owe. We've read the brief, and the other side agrees when they said they're very sorry, mea culpa. Okay. But that's not the real issue we have before us. All right. I just wanted to make sure that I appreciate that, Your Honor. The district court, we brought claims under the Fair Debt Collection Practices Act and the Equal Credit Opportunity Act. The district court dismissed the claim under the Fair Debt Collection Practices Act on the ground that Wells Fargo was not a debt collector within the meaning of that statute. And when I read the plain language of the statute, I couldn't see how Wells could be a debt collector. It seemed like the only statutory provision that came close was regularly collecting the debts of another, but I didn't see any allegations in the complaint that Wells regularly collected debts of another. The only thing I saw in the complaint was that Wells Fargo is in the business of collecting debts, but doesn't say anything about whether they're debts of another or not. So how does Wells then fall into the statutory definition of debt collector? Okay, Your Honor. First, I guess there's two separate issues. What we said in the complaint, and I'll explain it now more clearly. What we said in the complaint, I was guilty of paraphrase, was that they're in the business of collecting debts. We're bound by the complaint, though, aren't we? Well, and we also, in addition, we said that they fit the statutory definition of debt collector. And beyond that, Your Honor, we cited in the complaint the O'Pong decision from the Third Circuit. And in the O'Pong decision from the Third Circuit, the court of appeals affirmed a factual finding by a district court that Wells Fargo was a debt collector within the meaning of the FPCPA. But the district court came to that, came to an opposite conclusion. There's been a lot of actions in it. The Third Circuit's not alone. It's got the Sixth and Seventh Circuit with it. Right. But the district court found other reasons for making a determination along the lines Judge Cuda indicated. And since then, there's been some other cases in the various circuits. So I think we've got a sort of a division we can look at as to what the courts have done. And I agree with Judge Cuda. I think it's the burden is the district court, a very fine district court judge, looked at the statute that I'm looking at, and it says of a default solely for the purpose of facilitating collection of such debt for another. Your Honor, can I just answer that? Yes. The term creditor is defined in A-4. The term debt collector is defined in A-6. The question here is whether they are a debt collector within the meaning of A-6. Now, as it happens, there is an overlap between parties who can be debt collectors for purposes of A-6 and creditors for purposes of A-4. The word creditor is used in A-4, but it's further qualified. So the district court looked at the definition of creditor under A-4. We submit that you should look at the definition of debt collector in A-6. And if I could quote the language so I'm not guilty of paraphrase again, a debt collector is any person, this is on page 15 of our reply brief, I'm sure you've found it, any person who uses any instrumentality of interstate commerce or the mails, we've got that much, in any business the principal purpose of which is the collection of any debts. Well, that's what a mortgage servicer does. A mortgage servicer is in the business of collecting debts. Well, as Wells Fargo's, I don't think the complaint alleged that Wells Fargo's principal purpose was to collect debts. Are you alleging that? Yes, Your Honor. And I'm, again, we are guilty of paraphrase. What we said in the complaint was they're in the business of collecting debts. We didn't use the magic words in the, and we said that they're a debt collector within the meaning of the statute. And are you saying now that the principal purpose of Wells Fargo is to collect debts? I'm saying that they are in a business, the principal purpose of which is the collection of debts. It doesn't require that that's their entire business. It doesn't require that that's their sole business. It just means the statute says in any business the principal purpose of which is the collection of debts. And we submit that the principal purpose of mortgage servicing is the collection of debts. Now, of course, it's true that mortgage servicers are generally exempt under the various exceptions set forth under the general definition. They're not claiming to fall within any of these exceptions. When a mortgage servicer does not fall within the exceptions, it can be a debt collector. If it's a debt collector. So by any business, do you interpret that language to mean like a line of business as opposed to like a subsidiary or the entire business? The entire business. Right. So any line of work. Yes. Right. I think also, Your Honor, the record evidence would show that Wells Fargo is regularly collects debts of others. Now, in two respects. Could I get back to this any business language? Is there any case that supports that interpretation of any business? It seems a little counterintuitive to me. Okay. You would make any lender that has a collection department a debt collector? Of course. Yes. Well, except that they would be accepted under the exemptions. There are a whole series of exceptions, and they probably would fall. They would normally fall within one of those exceptions. So there really would be no difference between a creditor and a debt collector unless the creditor fell within one of the exceptions under your interpretation. Yes. Correct? Well, yes, Your Honor. All right. Beyond that, Wells Fargo, and this is a finding of the district court. I think Judge Wallace had a question. I'm just trying to see where this leads us. Under sub 4, they're not solely for the purpose of collecting such a debt for another. So they are a creditor. And at the same time, if I understand you, they're also a debt collector. Yes. And so they can be both. For purposes of 4 and 6. 6 has a creditor exception, but the creditor exception in 6 is a term of art. It refers to creditors who acquire debts that are not in default when they acquire them. No, no. That's not in the statute. That's in the cases. No, no, no. That's in the statute, Your Honor. That's in the F. Have to be in default. If you go down to the F exception under 6. Yes. That's where that is, that exception is taken from. The cases draw that from the F exception. So if I understand your argument, you disagree with the cases that have said creditor and debt collector are mutually exclusive. I think if you look at the cases, what they're saying is that for purposes of 6, they're mutually exclusive. They're using creditor as a term of art to refer, in short, to an entity that falls within the creditor exception in the F exception. And if they fall within the F exception, then they're not a debt collector. Do you want to save the rest of your time? I do. Good morning, Your Honor. Jan Chilton for Wells Fargo Bank. I found the discussion you had with my opponent very interesting. I'd like, if I may, to take you off to a different portion of the statute just briefly and come back to debt collector. Because I think you don't even need to reach debt collector because we don't have a debt here. The beginning point of the Fair Debt Collection Practices Act is that there has to be a debt, an obligation to pay. And there is none in this case because the Schlegels filed a Chapter 7 bankruptcy and received a discharge. This debt was not accepted from the discharge and, therefore, it was discharged. They no longer owe any money. Let me see if I understand you correctly. They had a mortgage and they were behind on their payments. They went into bankruptcy. And I understand the behind on the payments got sucked up into the bankruptcy and they're out of debt. I'm sorry. I didn't hear your last words there. I'm sorry. As I understand it, they had a home in another state and they had a mortgage and they're trying to pay. They got behind. They went into bankruptcy. And through the bankruptcy proceeding, what they owed in that failure to pay their bills was erased. But they still got the house. They still have the house. And it still has a mortgage. There's a mortgage on the house. True. So is that part of it, the mortgage on the house, that wasn't erased through bankruptcy? Quite correct. So isn't that a debt? No, it isn't, because there's no obligation to pay money. The First Circuit decided this very issue in the Arruda case that we cited in our Appalese brief. Yeah. So are you saying that any nonrecourse debt is not really a debt? True. Is that your position? Yes. Are you going this far to say that a debt collector, without worrying about that definition, can go pursue somebody and say, you're in default on such and such a debt and there is no debt and therefore there's a defense to any action under the statute because it's a total fraud. There was no debt, therefore, I'm off the hook. No. No, I'm not saying that, because the statute was carefully drafted to address exactly that situation. It says a debt is an obligation or an alleged obligation to pay. Here, there are. They didn't give these people an alleged obligation to pay? No, they didn't. Actually, every notice that was sent had in it a warning that if your debt was discharged in bankruptcy, we're not trying to collect from you personally. And it further, most of them also said, we, our records reflect you were discharged in bankruptcy. You can see that in, at pages about 26 through 35 of the excerpts of record. Is there any case that supports your interpretation that nonrecourse debt is not a debt? Yes. As I said, it's Arruda. Hold on a sec. Arruda v. Sears Roebuck and Company, 310 F. 3rd, 13 at page 23. That's First Circuit case 2002. Judge Sell, you ever look at that? Well, you know better than I, Your Honor. So assuming we disagree with you about that issue, is Wells Fargo then a debt collector? No. And thank you for the segue. I did want to reach the issue. I, first of all, I disagree with Mr. Harris about whether you can be a debt collector and a creditor with respect to a single debt. You can't be both. It's one or the other. We've cited cases. There's a number of cases that hold that, but I didn't see any textual support for that in the statute. How, where in the statute does it indicate that they're mutually exclusive terms? Well, it doesn't say so in so many words. I'll grant you that. But I think the intent of Congress was pretty clear, and we cited in our brief, that they thought debt collectors needed regulation, whereas creditors did not. Well, what about the, I think, opposing counsel notes that the definition of debt collector indicates that it includes a creditor who uses a false name. So it doesn't appear. There's some textual support for saying that debt collector and creditor are not mutually exclusive. Well, I would disagree. I think that proves the opposite point. When Congress wanted to draw a creditor into the opposing definition, it did so explicitly. It said for this limited purpose, if you're using a different name, then you lose the protection of being a creditor, and you're treated as if you're a debt collector. The negative inference from that is, in all other situations where you're not using a false or, well, a business name, not a false name, you're a creditor and not a debt collector. Otherwise, there'd be no reason to have that sentence in there. Well, this seems it starts with notwithstanding the exclusion provided by Clause F. So it sounds like it's merely saying this sort of creditor is not exempted by Clause F, and it doesn't rule out any other sort of creditor. I guess that's another inference that could be drawn from that language. Well, perhaps. But what I would point out is that the F exclusion also applies only to a person who's collecting a debt for another. Here, Wells Fargo was not collecting a debt for another. So F wouldn't apply from the outset, whether or not the debt was acquired in default. And So their other argument, as I heard it this morning, was that if a creditor is in a line of business, the principal purpose of which is the collection of any debts, then they're a debt collector. And Wells Fargo is in a line of business to collect debts. How do you respond to that argument? Phooey. There is no authority for that proposition. It's an inventive reading of the statute, but it makes hash of the statutory purpose and the words here. Generally speaking, as I said, Congress did not intend to regulate creditors. If one were to accept that definition of any, that reading of any business as any line of business, and Congress certainly knows how to say those words if it wants to, almost every creditor would automatically be a debt collector because they are in, most of them anyway, in the business of collecting the loans they make. And that's a line of business, the purpose of which is collection. So it would basically erase the definition of creditor and make everyone a debt collector. That can't have been what Congress intended. Could we address the Equal Credit Opportunity Act? If you wish. Did you want to start me off with a question or just respond to this brief? Okay. Our view is that there was no violation of the Equal Credit Opportunity Act. The allegation is we should have given adverse action notice. We say we took no action at all. We sent letters. They said nasty things. But nothing happened other than the letters. And the letters ---- Why isn't that an implicit revocation of the extension of credit? There was an extension of credit, and then you sent a series of letters ignoring this past extension of credit and saying if you don't pay up, we're going to start foreclosure proceedings. Why doesn't that implicitly revoke the credit that previously had been extended? Well, because neither party treated it as that. They were treated as mistaken communications. Well, both were treated as mistaken, right? Because they kept calling and saying, oh, it's a mistake. But then you kept sending the letters. So it didn't appear that Wells was treating it as a mistake. Depending on how one looks at it, certainly the Schlegels kept making payments. The payments were accepted. They weren't returned. Nothing ---- no foreclosure action was initiated. Nothing happened other than some correspondence went out. I would also say that the purpose of the adverse action notice is to allow the debtor or applicant to know the reason why adverse action has been taken. Here, it was perfectly clear from the face of what the mistaken notices why the action was taken. Somebody still thought there was no loan modification agreement. So there would be no purpose served in sending another notification out saying the exact same thing. You know, it just wouldn't do anything. It might have been a function of having somebody in the bank look into it and trying to frame a reason and to stop it. The other thing is, how could the Schlegels have done anything else in good faith other than continue to make the payments they had promised to make? How could that be a negative factor? Well, it's not a negative factor. I certainly didn't mean to criticize the Schlegels for doing what they promised to do. My point was merely that they didn't treat the letters they received as a revocation of the loan modification agreement. And, in fact, neither, in the end, did Wells Fargo. Everybody treated the loan modification agreement as enforceable. Finally, I mean, obviously, there was a period during which Wells Fargo, through whatever mistaken mechanism, lost track of it. But, in the end, nothing happened. No change was made. For adverse action to occur, we believe there has to be actual action. Something has to change. I think we have your argument. Thank you. I have a question I want to ask. I want to go back to the other act. In three circuits, the Third, the Sixth, and the Seventh, they've indicated that if the loan is in default when purchased, then you become a debt collector. And I understand there's an argument as to whether or not the Third, the Sixth, and the Seventh Circuit are right or wrong. What circuits have decided the way you wish us to decide? I don't believe any circuit has, Your Honor. We have sort of a rule. It's not always enforceable. We have sort of a rule that we don't like to make conflicts in circuits, especially with nationwide statutes of the United States. And so we say, unless there is a good reason, we will join other circuits. The district court judge, looking at the situation, decided to do otherwise, but there's only one circuit at that time. Now there's three circuits. Why should we not just join the other circuits? And if the four circuits, then, are wrong, they'll have to amend the statute. Why should we create a conflict in the United States over this issue, which is countrywide? Well, Your Honor is, of course, right in that conflicts are to be avoided if possible, although the Ninth Circuit has, in related areas such as in the Penrod decision, not been fearful of creating conflicts at all. Here, I think the problem with the Third, Seventh, and Sixth Circuits is that they're not going to be able to make a conflict in the United States over this issue. And the problem with the Ninth Circuit cases is that they don't analyze the statute properly. They start with an exception and work backward toward the definition, rather than starting with a definition and working down to the exception. I understand that argument. And, well, I think it's a pretty powerful argument that they're using the wrong method in interpreting a statute, and that provides a solid basis on which this Court can say, we follow the correct interpretation methodology. As the district court did. But I think you can understand the process, representing an institution which is nationwide, that they'd rather have all of the circuits doing it in one way, so they can then adjust what they need to do. But your position is that this is too important for that? Or that the other three circuits are plainly wrong and we ought to go the right way? I think both of the latter, yes. And I would point out that insofar as one is concerned about business being able to adjust to a rule, a conflict on this issue benefits business and will not create a difficulty. At worst, you know, a business that operates nationwide might take extra precaution in those circuits where it might be called a debt collector. It could, if it wished, take those added precautions even in the Ninth Circuit if the Ninth Circuit went the other way. There's nothing that prevents it from protecting itself. So in that sense, it would be different if the Ninth Circuit, you know, if we flip-flopped it and the Ninth Circuit were saying, we're going to treat as debt collectors people who three other circuits say are not. Do you see what I mean? Yes. Okay. Thank you. Your Honor, I'd just like to, on the Equal Credit Opportunity Act point, the Schlegels were told the loan modification agreement is not in effect. It wasn't just an implicit, it was an explicit abrogation. They didn't put it in the form of a letter, but it was the same, that shouldn't make it better. And they suffered the types of harms that the Equal Credit Opportunity Act is designed to protect people against. They lost the peace of mind that this loan modification agreement was supposed to give them. And for Mr. Schlegel suffering from post-traumatic stress disorder, this was particularly difficult, and he had to engage counsel to get things straightened out. And in terms of they didn't comply, I mean, the first, I mean, to say that they substantially complied, they didn't comply with the adverse action notice requirement. They haven't made that argument before. If they had, the reason that you have these things is to create a procedure to avoid these sorts of errors. The Federal Reserve Board has created an inadvertent error exception. So if they have procedures in place designed to prevent these sorts of errors, they've got a defense that they can make to it. But when the Federal Reserve Board has said that loan modifications are extensions of credit under the Equal Credit Opportunity Act, a mistaken revocation of a loan modification agreement is an adverse action. The fact that after filing a lawsuit, we got it undone, we had to file a lawsuit under the Equal Credit Opportunity Act to get it undone. If we don't have a positive action under that statute, how are we going to do it next time? This was the mechanism by which we straightened things out. And it ought to be available for people, because these things happen a lot. If you win on that, if you win on that issue, what do your clients gain? Well, there's statutory damages, potential statutory damages under that and attorneys' fees. Attorneys' fees. And statutory damages. Statutory damages of up to $10,000, and I think in attorneys' fees. And we've also brought it to the extent it's a generalizable relief, it may be for a larger group of people. Thank you very much. Thank you very much. Thank you for your arguments. The case of Schlegel v. Wells Fargo is submitted.
judges: Garbis, Wallace, Ikuta